# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| APM Terminals Mobile, LLC, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| | )   **CASE NO.: 1-23-CV-00332-C** |
| v. | ) |
| | ) |
| International Longshoremen's | ) |
| Association, AFL-CIO, Local Union | ) |
| 1410, | ) |
| | ) |
|     Defendant. | ) |

## <u>REPORT OF PARTIES' PLANNING MEETING</u>

Pursuant to Fed. R. Civ. P. 26(f), a conference was held on February 3, 2026

between:

> John B. Holmes III
> Attorney for Plaintiff APM Terminals Mobile, LLC ("Plaintiff");
>
> George Davies; and
> Richard Rouco
> Attorneys for Defendant International Longshoremen's Association,
> AFL-CIO, Local Union 1410 ("Defendant").

1.     <u>The Parties' Narrative Statements of the Case.</u>

**Plaintiff's Narrative**: On April 27, 2020, Plaintiff and Defendant

International Longshoremen's Association, AFL-CIO, Local Union 1410 ("Local

1410") entered into a binding local collective bargaining agreement (the "Local

CBA"). The Local CBA includes a no-strike provision that prohibits Local 1410

and its members from engaging in any work stoppage or strike activity at any time for any reason. Notwithstanding the unequivocal language in the no-strike provision, on the morning of August 28, 2023, one or more members of Local 1410 directed other union members to stop work, which quickly initiated a complete work stoppage by the members of Local 1410 that continued throughout the workday on August 28 and, in whole or in part, the workdays on August 29 & 30, 2023.

Within hours of the work stoppage on August 28, Plaintiff filed its declaratory judgment Complaint in the state court along with a Verified Application for a Temporary Restraining Order ("TRO") seeking to immediately enjoin Local 1410 and its members from further participating in the work stoppage. On the morning of August 29, 2023, the Honorable Ben H. Brooks, presiding in the Circuit Court of Mobile County, issued the TRO, prohibiting the work stoppage and requiring Local 1410 leadership to take all necessary action to return the Local 1410 members to work at APM. As mentioned, even after the TRO was entered, the work stoppage continued, and Plaintiff alleges that Local 1410 violated both the no-strike provision and the mandates of the TRO.

On August 30, 2023, this action was removed to this Court based on federal question jurisdiction. Plaintiff does not dispute the Court's jurisdiction.

Plaintiff anticipates that Defendant will attempt to justify its unlawful work stoppage by claiming the work stoppage was not authorized or condoned by Local

2

1410 leadership (i.e., it was organized by a few wildcat members without the knowledge or support of Local 1410) and/or pointing to alleged unrelated work disputes between Plaintiff and Local 1410.  These include disputes about the proper work jurisdiction of Local 1410 and/or professed safety concerns that were never mentioned, much less formally grieved, as required by the Local CBA, prior to the work stoppage.  Regardless, neither alleged justification authorizes a work stoppage pursuant to the clear language of the no-strike provision and Local CBA.  Simply put, there is no justification for the unlawful work stoppage that occurred, causing Plaintiff to suffer significant injuries, some of which are irreparable in nature and some that are capable of being redressed by monetary damages.

Plaintiff's damages include lost rail and other revenue, breached obligations to Plaintiff's rail shipping and other customers, fees owed to third parties based on delays and missed shipments, labor costs incurred in an attempt to mitigate the disruption and delay caused by the work stoppage, and other damages, including attorney's fees and expenses.

In sum, Plaintiff seeks:

(i)    A declaration of the parties' rights under the Local CBA, including:

(a)    whether the events on August 28, 2023 violated the no-strike clause;

(b)    whether the work stoppage that continued through the end of the workday on August 30, 2023 after the TRO was entered violated the no-strike provision and/or the TRO;

3

and

(c)    whether the alleged justifications for the work stoppage offered by Local 1410 permit or excuse the work stoppage.

(ii)    Judgment in Plaintiff's favor on its claim for breach of the no-strike provision, awarding Plaintiff its compensatory damages resulting and arising from the breach, including its reasonable attorney's fees and expenses, and all other relief determined just and proper.

**Defendant's Narrative**:

This case involves a dispute over issues that are subject to the grievance and arbitration procedure of the Local APM and ILA Local 1410 collective bargaining agreement and the ILA Master Agreement. Local 1410 denies that it or its members engaged in a work stoppage as alleged in the amended complaint and that it did not instigate, encourage, ratify or condone any conduct that is alleged by APM to breach the no-strike clause of the APM-Local 1410 CBA or the Master Agreement. APM suspended several workers and removed them from work on August 28, 2023 for conduct it alleged breached the no strike cause of the Local CBA. APM's suspension and removal of these workers violated the Local CBA. These workers have grievances pending over APM's actions and those grievances like the dispute raised here by APM are subject to the grievance and arbitration procedures of the Local CBA and or the Master ILA Agreement.

Local 1410 also denies that it or its members engaged in any work stoppage on August 29 and 30, 2023.  Local 1410 complied with its obligations under the Local CBA to confirm labor orders and post jobs available for work.

2.      This jury action should be ready for trial by **March 2027**, and trial is expected to last approximately 3-4 days.

3.      The parties request a pretrial conference in **February 2027** or approximately one month prior to trial.

4.      Discovery Plan.  Discovery will be needed on the following topics: the allegations and defenses in Plaintiff's Amended Complaint and related pleadings, including the events and communications between and among the parties leading up to the alleged work stoppage that began on August 28, 2023; Defendant's communications and/or instructions to the local union members with respect to alleged violations of the Local CBA and the work stoppage that is the subject of Plaintiff's claims; Defendant's compliance with the Local CBA and/or TRO issued by the state court; Defendant's alleged justifications for the alleged work stoppage, including prior grievances filed by Defendant or its local members and/or alleged violations of the Local CBA; Plaintiff's damages; the Plaintiff's safety and work practices surrounding the work in question; Plaintiff's compliance with the collective bargaining agreements before bringing suit for injunctive relief and/or damages; the Plaintiff's use of labor during the alleged work stoppage; Grievances

related to the discipline of employees it alleges engaged in a work stoppage; the scope and application of the grievance and arbitration procedures of the APM Local 1410 CBA and the ILA Master Agreement; the facts and circumstances regarding work being performed by APM on August 28-30, 2023 that is alleged in the amended complaint; grievances involving the work in this case and the identity and location of witnesses and relevant documents or other evidence.

All discovery must be commenced in time to be completed by **November 15, 2026.**

5. <u>Initial Disclosures</u>. The parties will exchange the information required by Fed. R. Civ. P. 26(a)(1) by **February 20, 2026**:

6. <u>Amendments to Pleadings</u>. The parties request until **March 20, 2026** to join additional parties and/or amend the pleadings.

7. <u>Expert Disclosures</u>. To the extent expert testimony is needed, the parties propose the following deadlines:

Plaintiff's expert disclosures shall be due on **July 24, 2026;**

Defendant's expert disclosures shall be due on **August 24, 2026;** and

Any expert disclosures for rebuttal shall be due on **September 14, 2026.**

8. <u>Pretrial Disclosures.</u> Final list of witnesses and exhibits under Rule 26(a)(3) due approximately twenty-one (21) days prior to the pretrial conference.

9.    Discovery Limits.

Maximum of 30 interrogatories, including sub-parts.

Maximum of 30 requests for admissions, including sub-parts.

Maximum of 35 requests for production of documents, including sub-parts, reserving the right of either party to seek leave from the Court for additional requests for production.

Maximum of 10 depositions by each party.  No deposition shall exceed 7 hours, exclusive of breaks, unless agreed to by the parties or ordered by the Court.

10.    Dispositive Motions.  All potentially dispositive motions filed no later than **December 18, 2026.**

11.    Settlement.  The parties are currently engaging in informal settlement discussions and will promptly inform the Court should they reach settlement of this matter. If not, the parties will continue evaluating settlement, including throughout and after discovery in this case.

12.    Electronically Stored Information.  The parties anticipate that this case will require the discovery of limited, but not excessive, electronically stored information (ESI).  Any relevant ESI that is produced to the other party will be produced in hard copy or searchable .PDF format to enable the parties to exchange such relevant information without undue burden or expense.  A requesting party may obtain relevant, non-privileged ESI in a format other than .PDF or hard copy upon agreement of the parties or upon a showing of substantial need to the Court for such

information in a different format.  Any party requesting the producing party to use specific search terms in locating and producing responsive ESI shall identify the specific search terms to the producing party.  The producing party shall bear the costs of searching for and producing ESI unless such effort becomes unduly burdensome and/or not proportional to the needs of the case.  In that case, the producing party may request cost-shifting or relief from the requested discovery from the other party.  The parties will exhaust efforts to resolve any disagreement about such matters before seeking relief from the Court concerning any dispute over the production of ESI.

13. Other Items.

(a)  Electronic service.  Pursuant to Fed. R. Civ. P. 5(b)(2)(E), the parties consent to service by electronic means of pleadings and other papers covered by Rule 5.

(b)  Preservation of Evidence. Counsel for the parties affirm they have instructed their clients to take appropriate measures to preserve and avoid the destruction, inadvertent or otherwise, of all relevant documents and evidence, including ESI, which includes but is not limited to, emails, texts, audio or video files, and other ESI.

(c)  Claw Back Agreement.

In the event that any party (the "Discloser") produces material or documents without intending to waive a claim

of privilege or confidentiality, the Discloser does not waive any claim of privilege or confidentiality for purposes of this or any other proceeding if, within a reasonable amount of time after the Discloser actually discovers that such material or documents were produced, the Discloser notifies the other party (the "Recipient") of the inadvertent disclosure of privileged or confidential items. Such notice shall identify the material or documents at issue and provide a privilege log for each in accordance with Fed. R. Civ. P. 26(b)(5)(A). Mere failure to diligently screen documents before producing them does not waive a claim of privilege or confidentiality.

If the Discloser asserts that it inadvertently produced privileged or confidential items in accordance with this Claw Back Agreement, the Recipient shall, within ten (10) business days of the notification, return the specified material or documents and any copies thereof and permanently destroy any electronic copies thereof. The Recipient shall further confirm such destruction in writing to counsel for the Discloser.

In the event that the Recipient contends the documents are not subject to privilege or confidentiality as asserted by the Discloser in accordance with this Claw Back Agreement, the Recipient may, following the return and destruction described herein, challenge the privilege claim through a Motion to Compel or other pleading with the Court. The parties agree that any review of items by the Judge shall be an in-camera review. Should the Recipient not challenge the Discloser's claim of privilege or confidentiality, or should the Court determine that the documents are in fact subject to privilege or confidentiality, the documents, or information contained therein or derived therefrom, may not be used in this or any other proceeding (whether arbitration or state or federal court). Nothing contained within this Claw Back Agreement shall be deemed to waive any objection to discovery that any party may wish to assert under applicable law.

9

(d)    Non-party Subpoenas.   Any party who seeks to issue a non-party subpoena will provide ten (10) calendar days' notice of their intention to serve a non-party.   Sufficient notice shall include service of the proposed subpoena on each party by e-mail.   Any objections to a non-party subpoena must be served prior to the subpoena's service on the party.   Copies of all documents received in response to any non-party subpoena must be copied to all parties, or be made available to each party, for inspection and copying within ten (10) calendar days of receipt by the issuing party.

(e)    Supplementation: Supplementations under Rule 26(e) are due as soon as practical after either party becomes aware of any such need to supplement and in any circumstance, no later than 30 days before the close of discovery provided the initial response has been served.   For any discovery response served within the 30-day period preceding the close of discovery, any necessary supplementation must be made within 10 calendar days of the serving party learning of the need to supplement. Any supplementation filed outside the time limits set forth above shall require leave of Court and a showing of good cause.

(f)    Electronic signatures. Defense counsel has the express consent of all other counsel to affix their electronic signatures to this document so that it may be jointly filed.

Respectfully submitted on February 4, 2026

*/s/ John B. Holmes III*
John B. Holmes III
Maynard Nexsen
1901 Sixth Ave N, Suite 1700
Birmingham, AL 35203
Email: jhomes@maynardnexsen.com

Mary Anna Brand
RSA Battle House Tower
11 North Water Street, Suite 24290
Mobile, Alabama  36602
Phone: 251-432-0001
Email: mbrand@maynardnexsen.com

**ATTORNEYS FOR PLAINTIFF**

/s/*George N. Davies*
George N. Davies

/s/*Richard P. Rouco*
Richard P. Rouco

QUINN, CONNOR, WEAVER,
 DAVIES & ROUCO LLP
Two North Twentieth Street
2 – 20th Street North
Suite 930
Birmingham, AL  35203
(205) 870-9989
gdavies@qcwdr.com
rrouco@qcwdr.com

/s/ *Jeffrey D. Sodko*
Jeffrey D. Sodko

OF COUNSEL:
QUINN, CONNOR, WEAVER
  DAVIES & ROUCO LLP
303 Perimeter Center N., Ste. 300
Atlanta, GA 30346
(404) 299-1211
jsodko@qcwdr.com


*Counsel for Defendant ILA Local 1410*